BRYAN, Justice.
Clement David Poiroux, Lamar Sanders Osborne, Travis Kyle Blair, Christopher Raybon, Sara Hawkins, Brian Williams, Levorish Hudson, Joseph Gardner Johnson, Jr., Nicholas Cain McNeil, and Willie James Walker II (hereinafter collectively referred to as “the criminal defendants”), and McNeil & Stokley Enterprises, LLC, d/b/a Metro Bonding Co., Bay Area Bail Bonds, LLC, A-Plus Bonding, Inc., Alternative Justice Bail Bonding, Inc., A-Advantage Bonding, LLC, Affordable Bail Bond, Inc., and Alistar Bail Bonds, Inc. (hereinafter collectively referred to as “the bail-bond companies”), appeal the dismissal of their claims against various district attorneys,[1] circuit court clerks,[2] and other state officials[3] (hereinafter collectively referred to as “the defendants”). We affirm the judgment in part, reverse it in part, and remand the cause for further proceedings.

Facts and Procedural History

On July 6, 2012, several of the criminal defendants and of the bail-bond compa *1031 nies[4] sued the defendants and fictitiously named parties in the Montgomery Circuit Court, alleging claims related to Act No. 2012-535, Ala. Acts 2012, codified as § 12-14-31 and § 12-19-311, Ala.Code 1975.[5] The criminal defendants and the bail-bond companies argued, among other things, that the fee assessed pursuant to § 12-19-311(a)(l)a., Ala.Code 1975 (“the filing fee”), and the fee assessed pursuant to § 12-19-311(a)(l)b., Ala.Code 1975 (“the back-end fee”), are unconstitutional. According to the original and amended complaints, each of the criminal defendants had been assessed either a filing fee or a back-end fee, and each of the bail-bond companies had paid filing fees on behalf of various clients.
With the exception of minor traffic cases, the filing fee and the back-end fee are “imposed on every bail bond in all courts of [Alabama].” § 12 — 19—311(a)(1). The filing fee, if collected by the official executing the bond, is collected “at the execution of the bond or at the time of release,” or, if the circuit clerk collects the bond, the filing fee can also be collected “within two business days of release.” § 12 — 19—311(b). The back-end fee is “assessed to the defendant and ... imposed by the court when the defendant appears in court for adjudication or sentencing.” § 12-19-311(e)(l).
The filing fee is assessed “in the amount of thirty-five dollars ($35) on each bond executed.” § 12-19-311(a)(l)a. The back-end fee is set forth in § 12-19-311(a)(l)b., which provides, in pertinent part:
“For a misdemeanor offense, a bail bond fee in the amount of 3.5 percent of the total face value of the bail bond or one hundred dollars ($100), whichever is greater, but not to exceed four hundred fifty dollars ($450). For a felony offense, a bail bond fee of 3.5 percent of the total face value of the bail bond or one hundred fifty dollars ($150), whichever is greater, but not to exceed seven hundred fifty dollars ($750).... For purposes of this section, face value of bond shall mean the bond amount set by court or other authority at release, not the amount posted at release on bail.”
Section 12-19-313, Ala.Code 1975, provides:
“If the charge against a defendant in a case is disposed of by a finding of not guilty, no bill, dismissal or nolle prosequi without conditions, the fees imposed in . the case pursuant to [§ 12 — 19— 311(a)(l)b.] shall not be assessed. In all other cases wherein the charge against a defendant is disposed of by conviction, a finding of guilty, or dismissal or nolle prosequi upon conditions to pay costs and fees, the fees pursuant to [§ 12-19-311(a)(l)b.] shall be assessed. If the defendant is admitted to a pretrial diversion program or to a specialty court program, the fee shall be assessed as with other court costs and fees.”
No such provision appears to apply to the filing fees.
The filing and back-end fees are distributed as follows:
“(f) The court clerks shall distribute on a monthly basis as other fees are distributed, the [filing] fees ... as follows: Ten percent from each fee shall be distributed either to the county general fund to be earmarked and distributed to the Sheriffs Fund, administered by the sheriff, in the county where the bond was executed or, where the bond is executed by the municipality, to the municipality; 45 percent of the fee to the court *1032 clerk’s fund where the bond was executed or where the bond is executed by the municipal court, to the municipality; 45 percent of the fee to the Solicitor’s Fund in the county where the bond was executed. The bail bond fee records shall be audited by the Department of Examiners of Public Accounts.
“(g) The court clerks shall distribute on a monthly basis as other fees are distributed, the [back-end] fees ... as follows: Twenty-one dollars and fifty cents ($21.50) from each fee shall be distributed to the county general fund which shall be earmarked and distributed to the Sheriffs Fund, administered by the sheriff, in the county where the bond was executed or, where the bond was executed by a municipality, to the municipality; 40 percent of the remainder of the fee to the court clerk’s fund where the bond was executed or where the bond is executed by the municipal court, to the municipality; 45 percent of the remainder of the fee to the Solicitor’s Fund in the county where the bond was executed; five percent to the State General Fund and ten percent to the Alabama Forensic Services Trust Fund. The bail bond fee records shall be audited by the Department of Examiners of Public Accounts.”
§ 12-19-311.
The criminal defendants and the bail-bond companies asked the circuit court to certify a class under Rule 23, Ala. R. Civ. P., and for a judgment declaring that the circuit court had jurisdiction over the matter and that § 12-19-311 violated the Alabama Constitution and the United States Constitution. They also asked for a declaration that the defendants’ acts and practices were “unlawful” and sought “injunc-tive and equitable relief in accord with the declarations of this Court.” The criminal defendants and the bail-bond companies asked the circuit court to “award [them] damages and the cost of this matter” and “a reasonable attorney fee.”
On July 26, 2012, the defendants, with the exception of the sheriffs named in the action (“the defendant sheriffs”), moved the circuit court to dismiss the criminal defendants and bail-bond companies’ claims against them or, in the alternative, for a summary judgment or, in the alternative, to deny the criminal defendants and bail-bond companies’ request for injunctive relief. On August 7, 2012, Sheriff D.T. Marshall moved the circuit court to dismiss the claims against him, and, on August 10, 2012, Sheriff Thomas Tate and Sheriff Huey “Hoss” Mack moved for dismissal of the claims against them. In a separate motion, Sheriff Sam Cochran also asked the circuit court to dismiss the claims against him. Each sheriffs motion alleged that he was entitled to sovereign immunity, pursuant to Art. I, § 14, Ala. Const, of 1901.
In August 2012, after a hearing, the circuit court denied the criminal defendants and bail-bond companies’ request for a temporary restraining order and a preliminary injunction. In October 2012, the circuit court stayed discovery pending a ruling on the motions to dismiss. In November 2012, the criminal defendants and the bail-bond companies amended their complaint, adding several plaintiffs and an additional claim for relief under the Fifth and Fourteenth Amendments to the United States Constitution. The criminal defendants and the bail-bond companies also filed objections to the circuit court’s order staying discovery and a response to the motions to dismiss. The defendants filed various motions to dismiss the amended complaint, to which the criminal defendants and the bail-bond companies responded.
On February 15, 2013, the circuit court dismissed the criminal defendants and bail *1033 bond companies’ claims, determining that, pursuant to this Court’s decision in Citizenship Trust v. Keddie-Hill, 68 So.3d 99 (AIa.2011), it did not have jurisdiction over the claims in this action and that the criminal defendants and the bail-bond companies lacked standing. The criminal defendants and the bail-bond companies appeal that judgment.

Standard of Review

“A ruling on a motion to dismiss is reviewed without a presumption of correctness. This Court must accept the allegations of the complaint as true. Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail.”
Newman v. Savas, 878 So.2d 1147,1148^19 • (Ala.2003) (citations omitted). “Matters of subject-matter jurisdiction are subject to de novo review.” DuBose v. Weaver, 68 So.3d 814, 821 (Ala.2011). “ ‘ “When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.” ’ ” Blevins v. Hillvood Office Ctr. Owners’ Ass’n, 51 So.3d 317, 321 (Ala.2010) (quoting Riley v. Pate, 3 So.3d 835, 838 (Ala.2008), quoting in turn State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)).

Analysis

We turn first to the criminal defendants and bail-bond companies’ argument that the circuit court erred in concluding that “[the circuit court] lack[ed] jurisdiction to consider [their] claims pursuant to the authority of [Keddie-Hill ].” In Keddie-Hill, this Court addressed claims by Mary Kathleen Keddie-Hill, Cheryl Tillman, and Justin Hammond, alleging, among other things, that the provision in Act No. 2009-768, Ala. Acts 2009, allowing a portion of the DNA-database fee to be distributed to the Citizenship Trust was unconstitutional. Keddie-Hill and Tillman had pleaded guilty to traffic violations and paid the fines and court costs assessed against them in their respective cases, including the DNA-database fee. However, they paid the DNA-database fee under protest, arguing that the provision for distribution of the fee to the Citizenship Trust was unconstitutional but that they could not afford a lawyer to challenge the allegedly unconstitutional portion of the fee. Hammond had also received a traffic citation, but, at the time he filed his claims in Keddie-Hill, he had not yet pleaded guilty or been ordered to pay any fines or court costs. Instead, he argued that “ ‘[s]hould I plea[d] or be found guilty I anticipate being ordered to pay fines and court costs assessed against me,’ ” including the allegedly unconstitutional portion of the DNA-database fee. Keddie-Hill, 68 So.3d at 103,
The Court first addressed Keddie-Hill’s and Tillman’s claims, stating:
“Keddie-Hill and Tillman seek an order declaring unconstitutional Act No. 2009-768, under which they ... were required to pay a $12 DNA database fee. They seek an injunction remedying the payment of the allegedly unconstitutional fine by ordering the defendants to refund the fees or, alternatively, an order making distribution of those fees pursuant to the cy pres doctrine. Thus, the present proceeding is a collateral proceeding to secure relief from criminal sentences on constitutional grounds. See Rule 26.11(c) and (j), Ala. R.Crim. P. (‘Docket fees and other costs in criminal cases shall be assessed upon conviction .... Court costs shall be deemed part of the penalty and the same procedures provided herein for nonpayment of fines shall apply for nonpayment of costs.’).”
Keddie-Hill, 68 So.3d at 104. The Court went on to hold: “[Bjecause this is a civil *1034 proceeding collaterally attacking the judgments in criminal cases, it falls within the scope of Rule 32, Ala. R.Crim. P.” 68 So.3d at 105 (citing, among other things, Rule 32.4, Ala. R.Crim. P. (“A proceeding under [Rule 32] displaces all post-trial remedies except post-trial motions under Rule 24[, Ala. R.Crim. P.,] and appeal. Any other post-conviction petition seeking relief from a conviction or sentence shall be treated as a proceeding under this rule.”)). The Court went on to note that Rule 32 prohibited the circuit court from addressing petitions for postconviction relief that involve more than one judgment entered in more than one trial or guilty-plea proceeding. See Rule 32.1, Ala. R.Crim. P. (“A petition that challenges multiple judgments entered in more than a single trial or guilty-plea proceeding shall be dismissed without prejudice.”). The Court then dismissed Keddie-Hill’s and Tillman’s claims without prejudice.
Turning to Hammond’s claims, the Court stated:
“[T]he issue before us is the propriety of a preliminary injunction entered in aid of an action seeking declaratory and in-junctive relief as to the alleged unconstitutionality of a penalty in Hammond’s pending criminal proceeding. The trial court was without subject-matter jurisdiction, however, to grant such preliminary relief or to entertain the underlying action brought by Hammond. ‘The general rule is that a court may not interfere with the enforcement of criminal laws through a civil action....’ Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587, 589 (Ala.2010) (holding that, with exceptions not applicable here, courts are without subject-matter jurisdiction to adjudicate in civil proceedings matters that should be decided in criminal proceedings or related forfeiture actions for which the legislature has provided). See 22A Am.Jur.2d Declaratory Judgments § 57 (2003) (‘A declaratory judgment will generally not be granted where its only effect would be to decide matters which properly should be decided in a criminal action.’ (quoted with approval in Tyson, 43 So.3d at 589)). Accordingly, the trial court was without subject-matter jurisdiction over the action brought by Hammond. The trial court’s order granting preliminary injunctive relief and denying class certification is due to be vacated; Hammond’s action, as well as the present appeal, are due to be dismissed without prejudice.”
Keddie-Hill, 68 So.3d at 106.
The criminal defendants and the bail-bond companies purport to seek relief from both the filing fee and the back-end fee. However, it is not until their reply brief that they make any specific arguments regarding the back-end fee. “Arguments made for the first time in a reply brief are not properly before this Court.” Baldwin Cnty. Elec. Membership Corp. v. City of Fairhope, 999 So.2d 448, 458 n. 12 (Ala.2008). Moreover, only two of the criminal defendants, Walker and Johnson, have alleged injuries from the imposition of the back-end fee. As the defendants note, Walker successfully challenged on appeal the back-end fee assessed against him in his criminal proceeding. See Walker v. State, 137 So.3d 943 (Ala.Crim.App. 2013) (finding that Walker could not be charged the back-end fee because he was not released on bail). No specific argument is made regarding alleged error in the circuit court’s judgment as it relates to the back-end fee assessed against Johnson. Thus, the criminal defendants and the bail-bond companies have not demonstrated any error in the circuit court’s judgment as it applies to the claims regarding the back-end fee.
With regard to the filing fee, the criminal defendants and the bail-bond companies argue that Keddie-Hill is distin *1035 guishable and that it does not require dismissal of their claims. We agree. None of the criminal defendants and the bail-bond companies in this case is seeking “relief from [a] criminal sentence! ] on constitutional grounds,” Keddie-Hill, 68 So.3d at 104, or “collaterally attacking the judgments in criminal cases,” 68 So.3d at 105, related to the filing fee. Pursuant to § 12 — 19—311(a)(2), the filing fee is assessed at “the issuance, reissuance, or reinstatement of the bond,” and not as part of a sentence or final judgment entered against the criminal defendants or the bail-bond companies. Indeed, the bail-bond companies’ obligations to pay the filing fees do not arise in any such proceedings. Thus, the criminal defendants and bail-bond companies’ claims related to the filing fee are not precluded under this Court’s first holding in Keddie-Hill.
This Court’s second holding in Keddie-Hill, which related to Hammond’s request for relief from a fine that had not yet been assessed against him, likewise does not apply. Hammond had been cited for speeding in Jefferson County, but, at the time the underlying action in Keddie-Hill was filed, criminal proceedings were still pending against him, and no judgment had been entered. This Court held that, under “ ‘[t]he general rule ... that a court may not interfere with the enforcement of criminal laws through a civil action,’ ” the trial court did not have subject-matter jurisdiction over Hammond’s claim. Keddie-Hill, 68 So.3d at 106 (quoting Tyson v. Macon Cnty. Greyhound Park, Inc., 43 So.3d 587, 589 (Ala.2010)).
As noted, however, the filing fee, unlike the DNA-database fee, which was assessed upon conviction or entry of a guilty plea, is, in most cases, “assessed at the issuance, reissuance, or reinstatement of the bond,”[6] § 12-19-311(a)(2), and is not dependent on any judgment or sentence meted out by the trial court or by any determination of guilt. Thus, the criminal defendants and bail-bond companies’ claims regarding the filing fee do not ask the circuit court to “adjudicate in [a] civil proceeding! ] [a] matter! ] that should [or would] be decided in [a] criminal proceeding!],” Keddie-Hill, 68 So.3d at 106 (citing Tyson, 43 So.3d at 589), or to enter a declaratory judgment ‘“where its only effect would be to decide matters which properly should be decided in a criminal action.’ ” Id. (quoting 22A Am.Jur.2d Declaratory Judgments § 57 (2003)). Thus, this Court’s second holding in Keddie-Hill is also distinguishable, and the circuit court erred in determining that the claims related to the filing fee were due to be dismissed for lack of subject-matter jurisdiction, pursuant to that case.
The defendants argue, however, that, even assuming the inapplicability of Keddie-Hill, the criminal defendants and bail-bond companies’ claims for monetary relief were due to be dismissed because such claims are barred by the doctrine of sovereign immunity. Article I, § 14, Ala. Const, of 1901, provides “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” This Court has stated:
*1036 “ ‘To determine whether an action against a State officer is, in fact, one against the State, this Court considers
“ ‘ “whether ‘a result favorable to the plaintiff would directly affect a contract or property right of the State,’ Mitchell [v. Davis, 598 So.2d 801, 806 (Ala.1992) ], whether the defendant is simply a ‘conduit’ through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), and whether ‘a judgment against the officer would directly affect the financial status of the State treasury,’ Lyons [v. River Road Constr., Inc.], 858 So.2d [257] at 261 [ (Ala.2003) ].”
“ ‘Haley [v. Barbour County ], 885 So.2d [783] at 788 [ (Ala.2004) ]. Additionally, “[i]n determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought.” Ex parte Carter, 395 So.2d 65, 67-68 (Ala.1980). [Alabama Dep’t ofTransp. v. Harbert Int’l, Inc., 990 So.2d 831, 839-40 (Ala.2008).]’
“ ‘... [C]ertain causes of action are not barred by § 14:
“ ‘ “ ‘There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act ... seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond them authority or in a mistaken interpretation of law.[7] Wallace v. Board of Education of Montgomery County, 280 Ala. [635] at 639, 197 So.2d 428 [ (1967) ]; Unzicker v. State, 346 So.2d 931, 933 (Ala.1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962).’ ”
“ ‘Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (quoting [Ex parte] Carter, 395 So.2d [65,] 68 [ (Ala.1980) ]) (emphasis omitted). These actions are sometimes referred to as “exceptions” to § 14; however, in actuality these actions are simply not considered to be actions “ ‘against the State’ for § 14 pur *1037 poses.” Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). This Court has qualified those “exceptions,” noting that “ ‘[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiffs recovery of money from the [S]tate.’ ” Alabama Agrie. & Meek Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (quoting Shoals Cmty. Coll, v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)) (emphasis added in Jones).’ ”
Ex parte Moulton, 116 So.3d 1119,1130-32 (Ala.2013) (quoting Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831, 840 (Ala.2008)).
In Patterson v. Gladwin Corp., 835 So.2d 137 (Ala.2002), this Court addressed whether a party that had successfully challenged the constitutionality of corporate franchise taxes collected pursuant to § 40-14-40, Ala.Code 1975, before that Code section was repealed, could get a refund of taxes paid under that statute. The Court determined:
“A direct action for a refund of taxes paid to the State is essentially ‘a common law action of indebitatus assumpsit against the State.’ J.R. Raíble Co. v. State Tax Comm’n, 239 Ala. 41, 44, 194 So. 560, 561 (1939). Clearly, a judgment in favor of the class, which seeks tax refunds totaling approximately $1 billion, would ‘affect the financial status of the state treasury.’ ”
Patterson, 835 So.2d at 143 (quoting State Docks Comm’n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932)). This Court then went on to note that several statutory remedies had been set forth to allow a refund of improperly paid taxes but ultimately found that the appellants in that case had not pursued those remedies. Therefore, the Court concluded:
“[T]he Taxpayers’ class action seeking a refund of franchise taxes paid pursuant to Alabama’s invalid statutory scheme is an action against the State as that concept is expressed in § 14.... Because the circuit court was without jurisdiction to entertain this action, we vacate the trial court’s class-certification order and dismiss the action.”
Patterson, 835 So.2d at 154.
The criminal defendants and the bail-bond companies in this case, like the taxpayers in Patterson, request a refund of fees paid under allegedly unconstitutional provisions of § 12-19-311. They have also requested the payment of costs and attorney fees. Recovery on those claims, like the taxpayers’ claims in Patterson, would “affect the financial status of the state treasury,” Patterson, 835 So.2d at 143, and would “ ‘result in the ... recovery of money from the [Sjtate.’ ” Alabama Agrie. & Meek Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004) (“However, ‘[a]n action is one against the [Sjtate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiffs recovery of money from the [S]tate.’ ” (quoting Shoals Cmty. Coll. v. Colagross, 674 So.2d 1311, 1314 (Ala.Civ.App.1995)) (emphasis omitted)). Such claims are barred by the doctrine of sovereign immunity. See Patterson, supra; see also Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211-12 (Ala.2006) (holding that “an award of interim attorney fees and expenses impacts the State treasury and divests it of funds in the very way forbidden by § 14”).[8] There *1038 fore, the circuit court properly dismissed the criminal defendants and bail-bond companies’ claims insofar as they sought monetary relief.[9]
• The defendant sheriffs argue that all the criminal defendants and bail-bond companies’ claims against them are barred by the doctrine of sovereign immunity.
“ ‘A sheriff is entitled to State immunity because of his status as a constitutional officer as detailed in Art. V, § 112, Ala. Const.1901. Suits against such officers for actions taken in the line and scope of their employment inherently constitute actions against the State, and such actions are prohibited by § 14.’ ”
Ex parte Donaldson, 80 So.3d 895, 898 (Ala.2011) (quoting Ex parte Shelley, 53 So.3d 887, 895 (Ala.2009)).
“Exceptions to State immunity for sheriffs (and their deputies) that have been recognized ... include actions brought
“ ‘ “(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.” ’ ”
Ex parte Donaldson, 80 So.3d at 898 n. 1 (quoting Alexander v. Hatfield, 652 So.2d 1142, 1143 (Ala.1994), quoting in turn Parker v. Amerson, 519 So.2d 442, 443 (Ala. 1987)).
The defendant sheriffs argue that none of the five exceptions to immunity applies here because “sheriffs do not collect, administrate, or enforce any of the bail bond fees.” Brief of Sheriffs Hughes, Tate, and Mack, at 13. We agree. Nothing in § 12-19-311 indicates that sheriffs are responsible for assessing, enforcing, or collecting the filing fee or that the sheriff is a necessary party for the construction of the statute. The criminal defendants and the bail-bond companies make no argument to the contrary; instead, they insist that because “the Circuit Court did not issue a ruling on whether or not the [defendant sjheriffs should be afforded immunity and dismissed from the case, the issue is not properly before this Honorable Court for a decision.” The criminal defendants and bail-bond companies’ reply brief, at 17. However, “[t]he assertion of State immunity [under § 14] challenges the subject-matter jurisdiction of the court; therefore, it may be raised at any time by the parties or by a court ex mero motu.” Atkinson v. State, 986 So.2d 408, 411 (Ala.2007). Thus, this Court may address the defendant sheriffs’ argument, regardless of whether that issue was addressed by the circuit court.
Because the criminal defendants and bail-bond companies’ claims against the defendant sheriffs do not fall within any of *1039 the recognized exceptions to the sovereign immunity accorded sheriffs, see Ex parte Donaldson, supra, the circuit court did not have subject-matter jurisdiction over those claims, and its judgment is due to be affirmed as it applies to the claims against the defendant sheriffs.
We turn now to the criminal defendants and bail-bond companies’ argument that the circuit court erred in concluding that they did not have standing to bring their claims against the defendants. This Court has recently noted: “[T]he concept [of standing] appears to have no necessary role to play in respect to private-law actions, which, unlike public cases ..., come with established elements that define an adversarial relationship and '■‘controversy’ sufficient to justify judicial intervention.” Ex parte BAC Home Loans Servicing, LP, [Ms. 1110373, September 13, 2013] — So.3d —, — (Ala.2013). Public-law actions involve “constitutional or other challenges to the actions of officials or administrative agencies.” BAC Home Loans, — So.3d at —; see also Black’s Law Dictionary 1350-51 (9th ed.2009) (defining “public law” as “[t]he body of law dealing with the relations between private individuals and the government, and with the structure and operation of the government itself; constitutional law, criminal law, and administrative law taken together”).
The underlying action is brought by private individuals and companies against various state officials, and the claims relate to the constitutionality of the fees imposed pursuant to § 12-19-311, Ala.Code 1975. Thus, this action falls within the definition of a public-law case, and the concept of standing applies.
In Town of Cedar Bluff v. Citizens Caring for Children, 904 So.2d 1253, 1256-57 (Ala.2004), this Court stated:
“In Jones v. Black, 48 Ala. 540 (1872), this Court first articulated a test for determining whether a party has the necessary standing to challenge the constitutionality of an act of the Legislature. We stated then:
“ ‘A party who seeks to have an act of the legislature declared unconstitutional, must not only show that he is, or will be injured by it, but he must also show how and in what respect he is or will be injured and prejudiced by it. Injury will not be presumed; it must be shown.’
“48 Ala. at 543. In Alabama Alcoholic Beverage Control Board v. Henri-Duval Winery, LLC, 890 So.2d 70, 74 (Ala. 2003), a party challenged the constitutionality of Alabama’s Native Farm Winery Act, § 28-6-1 et seq., Ala.Code 1975. In that case, this Court effectively restated the standard articulated in Jones, using language adopted from the Supreme Court of the United States:
“‘A party establishes standing to bring a challenge [on constitutional grounds] when it demonstrates the existence of (1) an actual, concrete and particularized “injury in fact ” — “an invasion of a legally protected interest”; (2) a “causal connection between the injury and the conduct complained of’; and (3) a likelihood that the injury will be “redressed by a favorable decision.” ’ ”
(Quoting Henri-Duval Winery, 890 So.2d at 74, quoting in turn Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130,119 L.Ed.2d 351 (1992).)
As noted previously, “[a] ruling on a motion to dismiss is reviewed without a presumption of correctness. This Court must accept the allegations of the complaint as true. Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail.” Newman, 878 So.2d at *1040 1148^19 (citations omitted). The criminal defendants and the bail-bond companies alleged in the complaint and amended complaint that they were required to pay the allegedly unconstitutional filing fee and that many of the criminal defendants were held in custody until the filing fee was paid. Accepting those allegations as true, the criminal defendants and the bail-bond companies have alleged “an actual, concrete and particularized ‘injury in fact’ ” arising from or related to the allegedly unconstitutional filing fee. Town of Cedar Bluff, supra. The criminal defendants and the bail-bond companies have requested relief in the form of a judgment declaring, among other things, that § 12-19-311 is unconstitutional; “permanent injunctive and equitable relief’ related to the requested declaratory relief; and damages, costs, and reasonable attorney fees. The criminal deféndants and the bail-bond companies specify that the damages would include a refund of the filing fees paid under the allegedly unconstitutional statute.
We have determined that the criminal defendants and bail-bond companies’ claims for monetary relief are barred by the doctrine of sovereign immunity. Therefore, those funds cannot act as redress for the alleged injuries. The defendants argue that “[t]o the extent a [criminal defendant] has paid the [filing] fee in the past, he has no standing to seek prospective injunctive relief. The existence of a filing fee does not impose any real or immediate threat of future injury to any of them, making their claims for future relief speculative.” Defendants’ brief, at 25.[10] The defendants cite City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), and O’Shea v. Little-ton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), in support of these arguments. In Lyons, the United States Supreme Court stated:
“In [O’Shea], we dealt with a case brought by a class of plaintiffs claiming that they had been subjected to discriminatory enforcement of the criminal law. Among other things, a county magistrate and judge were accused of discriminatory conduct in various respects, such as sentencing members of plaintiffs class more harshly than other defendants. The Court of Appeals reversed the dismissal of the suit by the District Court, ruling that if the allegations were proved, an appropriate injunction could be entered.
“We reversed for failure of the complaint to allege a case or controversy. 414 U.S., at 493. Although it was claimed in that case that particular members of the plaintiff class had actually suffered from the alleged unconstitutional practices, we observed that ‘[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.’ Id., at 495-496. Past wrongs were evidence bearing on ‘whether there is a real and immediate threat of repeated injury.’ Id., at 496. But the prospect of future injury rested ‘on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners.’ Ibid. The most that could *1041 be said for plaintiffs’ standing was ‘that if [plaintiffs] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed.’ Id., at 497. We could not find a case or controversy in those circumstances: the threat to the plaintiffs was not ‘sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses....’ Id., at 496. It was to be assumed ‘that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.’ Id., at 497.”
Lyons, 461 U.S. at 102-03 (emphasis added).
The Supreme Court went on to apply the rationale in O’Shea to Lyons’s request for “a preliminary and permanent injunction against the City [of Los Angeles (‘the City’) ] barring the use of control holds,” including chokeholds, by the City’s police officers. 461 U.S. at 98. Lyons alleged that he had been injured when police officers from the City applied a chokehold to him during a traffic stop, even though, Lyons argued, “[he] offered no resistance or threat whatsoever” to the officers. 461 U.S. at 97. The Supreme Court determined:
“Lyons’ standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers. Count V of the complaint alleged the traffic stop and choking incident five months before. That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy between these parties.
“In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City’s policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City’s policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.”
*1042 Lyons, 461 U.S. at 105-06 (some emphasis added). The Supreme Court determined that, pursuant to O’Shea, this possibility was not sufficient to give Lyons standing to bring his claims for injunctive relief. See Lyons, 461 U.S. at 110 (“Our conclusion is that the [United States] Court of Appeals [for the Ninth Circuit] failed to heed O’Shea ... and other relevant authority, and that the District Court was quite right in dismissing [Lyons’s claims for injunctive relief].”).
As the criminal defendants and the bail-bond companies note, this case, unlike Lyons, involves an “official policy” of .the State. Section 12-19-311(a) provides that the filing fee will be “imposed on every bail bond in all courts of this state,” and the criminal defendants or their sureties— the bail-bond companies — can be held in contempt for failing to pay those fees. See § 12 — 19—311(c), Ala.Code 1975. Also, unlike the plaintiff in Lyons, the criminal defendants and the bail-bond companies have sought to be certified as representatives of a class of plaintiffs who have allegedly suffered the same injuries. -
However, O’Shea also involved a class of plaintiffs and, like the plaintiffs in that case, future harm to the criminal defendants here “rests on the likelihood that [the criminal defendants] will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings.” O’Shea, 414 U.S. at 496; see also Lyons, 461 U.S. at 105 (“That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.”). This is true even under the official policy in this case. The criminal defendants and the bail-bond companies have not meaningfully distinguished Lyons or O’Shea in this regard.
The criminal defendants and the bail-bond companies also argue that, “[ujnlike the O’Shea plaintiffs, [the criminal defendants and the bail-bond companies] do not have to violate the law to be again subject to the unconstitutional [filing] fee. Instead, they only need to be arrested and be released on bail, which is not always equivalent to breaking the law.” Criminal defendants and bail-bond companies’ brief, at 57. However, the United States Supreme Court in O’Shea did not state that the plaintiffs’ alleged future injury depended upon actual violations of the law but upon being arrested and charged with violations of the law. Instead, the Supreme Court stated: “[H]ere the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners.” O’Shea, 414 U.S. at 496. As noted previously, the prospect of future harm to the criminal defendants here rests on the same assumption — that the criminal defendants will be arrested and subjected to bond proceedings.[11]
*1043 Pursuant to the Supreme Court’s decision in O’Shea, the criminal defendants and the bail-bond companies have not demonstrated that the circuit court erred in determining that the criminal defendants lacked standing to bring their claims for injunctive relief. Similarly, the criminal defendants’ claims for declaratory relief would not redress their alleged injuries where, as here, the likelihood of future harm is speculative. Thus, the circuit court correctly dismissed those claims for lack of standing, see Town of Cedar Bluff, supra, and the circuit court’s judgment is due to be affirmed with regard to the criminal defendants’ claims for both declaratory and injunctive relief.
The defendants do not argue that the bail-bond companies lack standing pursuant to O’Shea and Lyons. Instead, they argue that the bail-bond companies lack standing because,
“while the statute does not require the [bail-]bond companies to pass the [filing] fee on to their customers, they apparently do so: All the [criminal defendants and the bail-bond companies] argue with fervor that the [filing] fee ‘comes out of the criminal defendants’ pockets.’ ([Criminal defendants and bail-bond companies’ brief,] at 47.) Taking them at their word, the [bail-]bond companies have no injury from the [filing] fee.”
Defendants’ brief, at 31. However, the statement from the criminal defendants and the bail-bond companies’ brief was made in the context of their argument that the criminal defendants had suffered a monetary injury, even where a bail-bond company or other individual had paid the filing fee on their behalf. The criminal defendants and the bail-bond companies do not argue that the bail-bond companies have recouped the filing fees paid on behalf of their clients or that they will be able to recoup those fees from future clients.
As noted previously, pursuant to the provision in § 12-19-311(a) that the filing fee be “imposed on every bail bond in all courts of this state,” the bail-bond companies are likely to suffer the injury alleged in the complaint and amended complaint— the payment of the allegedly unconstitutional filing fee — for bonds paid on behalf of future clients. Thus, the bail-bond companies have alleged an injury caused by the allegedly unconstitutional statute that would be redressed by the requested declaratory and injunctive relief. Therefore, the circuit court erred in dismissing those claims based on an alleged lack of standing. See Town of Cedar Bluff, 904 So.2d at 1256-57.
Moreover, as noted previously, our decision in Keddie-Hill does not apply to the bail-bond companies, which do not pay the filing fee as part of a criminal proceeding, and the doctrine of sovereign immunity does not bar “actions brought to enjoin State officials from enforcing an unconstitutional law” or “actions brought under the Declaratory Judgments Act ... seeking construction of a statute and its application in a given situation.”[12] See Ex parte *1044 Moulton, 116 So.3d at 1131. Thus, the circuit court’s judgment is due to be reversed insofar as it dismissed the bail-bond companies’ claims for declaratory and in-junctive relief, except those claims asserted against the sheriff defendants.
The defendants also argue that, “[e]ven if the circuit court had jurisdiction [over the criminal defendants and bail-bond companies’ claims], the judgment should be affirmed because [the] defendants are due to prevail on the merits.” Defendants’ brief, at 32. However, as rioted previously, “in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail.” Newman, 878 So.2d at 1149 (emphasis added). Thus, we will not address the merits of the bail-bond companies’ surviving claims at this time.

Conclusion

For the foregoing reasons, we affirm the circuit court’s dismissal of all claims regarding the back-end fees, all claims seeking monetary relief, and all claims against the defendant sheriffs. We also affirm the dismissal of the criminal defendants’ claims for declaratory and injunctive relief. We reverse the circuit court’s judgment insofar as it dismissed the bail-bond companies’ claims for declaratory and injunc-tive relief against the defendants other than the defendant sheriffs. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and STUART, BOLIN, PARKER, MAIN, and WISE, JJ., concur.
MURDOCK, J., concurs specially.
SHAW, J., concurs in the result.

. The district attorneys named in the action include: Ashley Rich, district attorney for Mobile County; Ellen Brooks, district attorney for Montgomery County; Douglas A. Valeska, district attorney for Henry and Houston Counties; Tommy Chapman, district attorney for Monroe and Conecuh Counties; Hallie Dixon, district attorney for Baldwin County; and Randall V. Houston, district attorney for Autauga, Chilton, and Elmore Counties. Steve Wadlington was substituted for Chapman as a party to the action after he replaced Chapman as district attorney for Monroe and Conecuh Counties in October 2012. See Rule 25(d), Ala. R. Civ. P.

. The circuit court clerks named in the action include: Jody Wise Campbell, circuit clerk of Baldwin County; Jojo Schwarzauer, circuit clerk of Mobile County; Florence Cauthen, circuit clerk of Montgomery County; Carla H. Woodall, circuit clerk of Houston County; William R. McMillan, circuit clerk of Monroe County; and Whit Moncrief, circuit clerk of Autauga County.

.The other state officials named in the action include: Sam Cochran, sheriff of Mobile County; D.T. Marshall, sheriff of Montgomery County; Andy Hughes, sheriff of Houston County; Thomas Tate, sheriff of Monroe County; Huey "Hoss” Mack, sheriff of Baldwin County; James "Herbie” Johnson, sheriff of Autauga County; Marquita Davis, director of the Alabama Department of Finance; Michael Sparks, director of the Alabama Department of Forensic Sciences; and John Hixon, Jr., executive director of the Alabama Peace Officers’ Annuity Benefit Fund.

. Williams, Hudson, Johnson, McNeil, Walker, and Allstar Bail Bonds, Inc., were actually added plaintiffs in the amended complaint filed in November 2012.

. Section 12-14-31 is not at issue in this appeal.

. Section 12-19-311(b), Ala.Code 1975, provides that, "[i]f a person is released on own recognizance, judicial public bail, or non-custodial offense pursuant to Rule 20[, Ala. R. Jud. Admin.], the [filing] fee shall be assessed at the time of adjudication or at the time that any other fees and costs are assessed.” Rule 26.11(c), Ala. R.Crim. P., provides that “[djocket fees and other costs in criminal cases shall be assessed upon conviction.” Under such circumstances, the filing fee could be considered part of a criminal defendant’s sentence or judgment. However, none of the parties argues that this provision applies to any of the filing fees paid by the criminal defendants or the bail-bond companies here.

. Later in Ex parte Moulton, 116 So.3d 1119 (Ala.2013), this Court restated the sixth "exception” to the sovereign-immunity bar under § 14 as follows:
"(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.”
116 So.3d at 1141 (citations omitted).

. The criminal defendants and the bail-bond companies cite Ex pane McCurley, 412 So.2d 1236, 1238 (Ala.1982), for the proposition that " ‘[t]o petition for the return of a fine and of costs imposed on the basis of unlawful authority is no more a suit against the state barred by sovereign immunity than to peti *1038 tion or file for the return of money paid to the government as income tax in excess of the amount due. To make more of the action than that offends common sense and severely distorts the image of justice as fairness.' ” (Quoting State v. Piekkola, 90 S.D. 335, 339, 241 N.W.2d 563, 565 (1976)). However, Ex parte McCurley is inapposite here, because it was in the nature of a criminal action — specifically, a petition for the writ of habeas corpus — asking the trial court to vacate an improper conviction and sentence, which included fines and court costs, whereas the criminal defendants and the bail-bond companies have sought by civil action to recover allegedly improper fees collected by the State.

, Our decision in this regard renders unnecessary any consideration of the criminal defendants and bail-bond companies’ request for an accounting or to hold the funds in escrow.

. The defendants do not appear to make this argument with regard to the bail-bond companies’ claims for injunctive relief; indeed, they cannot. Section 12-19-311 (a) provides that the filing fee will be “imposed on every bail bond in all courts of this state.” Thus, the bail-bond companies are likely to suffer the injury alleged in the complaint and amended complaint, i.e., die payment of the allegedly unconstitutional filing fee, for each future client for whom drey agree to pay the bond. Thus, their claims for injunctive relief are not based solely on past wrongs.

. The criminal defendants and the bail-bond companies also argue that O'Shea is distinguishable because, they argue, "unlike the plaintiffs in O'Shea, the [criminal defendants here] do allege a specific injury from the challenged actions: specifically, the payment of the [filing] fee.” Criminal defendants and bail-bond companies' brief, at 57. However, the Supreme Court in O’Shea noted that, "[a]t oral argument, respondents' counsel stated that some of the named plaintiffs-respondents, who could be identified by name if *1043 necessary, had actually been defendants in proceedings before petitioners and had suffered from the alleged unconstitutional practices.” O'Shea, 414 U.S. at 495. Thus, the criminal defendants and the bail-bond companies have failed to demonstrate a meaningful distinction in this regard as well.

. In Ex parte Town of Lowndesboro, 950 So.2d 1203, 1211 n. 5 (Ala.2006), this Court noted that a declaratory-judgment action is not barred by the doctrine of sovereign immunity
" 'when an officer of the State is confronted with an uncertain problem of what the law means which requires certain acts on his part, or whether the law is valid, and he proposes to pursue a certain course of conduct in that connection, which would injuriously affect the interests of others who contend that he has no legal right thus to act....' " *1044 (Quoting State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 633, 11 So.2d 342, 345 (1943), superseded, in part, on other grounds, Ala. Code 1940, tit. 7, § 167 (now Ala.Code 1975, § 6-6-221) (emphasis added).)