BOLIN, Justice.
Petitioners Ronald Hampton, Darry Phillips, Wayne Taylor, Isaac Johnson, and Sharon Sheppard are members of the Choctaw County Board of Education (hereinafter collectively referred to as “the Board members”). Petitioner-Sue, Moore is the superintendent of the Choctaw County Public School System. The petitioners seek an order compelling the Choctaw Circuit Court to vacate its denial of their summary-judgment motion and to enter summary judgment in their favor on the ground that the trial court lacks subject-matter jurisdiction over the claims because of the plaintiff’s death and the petitioners’ immunity.

Facts and Procedural-History

Brenda Franks was a former nontenured employee of the Choctaw County Public School System. Before the 2008-2009 school year, Franks had been employed as a .full-time counselor in the school system for three years when her contract was not, renewed. For the 2008-2009 school year, Franks was offered and accepted a part-time, temporary position as a vocational counselor starting in February 2009. She signed an employment contract acknowledging that the position was temporary. She also signed a “Letter of Understanding Concerning Temporary Employment” that stated her employment was -a temporary condition and that continued employment was conditioned upon , a “suitability determination” made upon receipt of a completed criminal-history background check and that if, after the background check, she was found unsuitable, the termination of her employment would be without recourse against the school system. Franks worked pursuant to the contract for five months.
On May 27, 2009, the superintendent notified Franks, in writing, of her intention to recommend that the Board members cancel the contract because of a “justifiable decrease in jobs in the system” as provided for in' Ala.Code 1975, § 16-24-8 (now repealed).[1] Franks’s notice stated that if the Board members voted to cancel the contract, a contest of -the cancellation would be heard in accordance with Ala. Code 1975, § 16-24-10 (now repealed). On June 25, 2009, the Board members approved the recommendation to cancel the contract. Franks did not contest the contract cancellation; In July 2010, the Board members posted a vacancy for a business-education teacher. Franks applied for the vacant position, but was not hired.
On July 31, 2012, Franks filed a “Complaint for a Declaratory Judgment, Writ of Mandamus, and Injunctive Relief.” In her *16 complaint, Franks asserted that the Board members had terminated her employment based on a reduction in force (hereinafter “RIF”). A RIF reduces professional staff employed by a school system and sets out procedures to be followed regarding the affected staff members. See Ala.Code 1975, § 16-1-33 (requiring all city and county boards of education to adopt a written RIF policy regarding layoffs, recalls, and notification of the RIF). Franks asserted that she was entitled to be hired for the business-education teaching position pursuant to the school system’s RIF policy. Franks sought to be instated to that position, with backpay, interest, and restoration of progress toward tenure. Franks sued the superintendent and the Board in their official or representative capacities.
On December 6, 2013, the petitioners moved for a summary judgment on the ground that they were entitled to sovereign immunity because they were sued in their official or representative capacities. They further argued that State-agent immunity barred any claims against the superintendent and that discretionary-function immunity barred any claims against the Board members. The petitioners also argued, among other things, that no RIF was ever implemented by the Board relative to the termination of Franks’s employment. Franks argued that § 14, Ala. Const.1901, immunity is not absolute in every situation and that her claims against the superintendent and Board members fell under several “exceptions” to § 14 immunity. The trial court denied the summary-judgment motion on November 14, 2014.
On December 12, 2014, the petitioners filed a suggestion of death with the trial court, stating that Franks had died on December 9, 2014. On January 6, 2015, the petitioners filed this petition for writ of mandamus. Franks’s estate was timely substituted as the plaintiff pursuant to Rule 25, Ala. R. Civ. P.

Standard of Review

“ ‘ “The writ of mandamus is a drastic and extraordinary writ, to be ‘issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).” Ex parte Carter, [807 So.2d 534,] 536 [(Ala.2001) ].’
“Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001).
“ ‘Subject to certain narrow exceptions ..., we have held that, because an “adequate remedy” exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.’ Ex parte Liberty Nat’l Life Ins. Co., 825 So.2d 758, 761-62 (Ala.2002).”
Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 965-66 (Ala.2011). The narrow exceptions when mandamus review is available include when the petitioner challenges the subject-matter jurisdiction of the trial court, Ex parte HealthSouth Corp., 974 So.2d 288, 292 (Ala.2007), or when the petitioner asserts immunity. Ex parte Alabama Peace Officers’ Standards & Training Comm’n, 34 So.3d 1248 (Ala.2009).

Discussion

Franks alleged that her employment had been terminated owing to a RIF and that she was entitled to be hired for a vacant teaching position pursuant to the *17 school system’s RIF policy. She sought to be appointed to the teaching position, backpay, interest, and restoration of progress towards tenure. In short, Franks sought injunctive relief in the form of appointment to the teaching position and monetary relief in the form of backpay and interest.
Rule 25(a)(1), Ala, R. Civ. P., governs the substitution of parties, after the death of a plaintiff. The rule provides for substitution of proper parties where claims are “not thereby extinguished” by the death of a party. Section 6-5-462, Ala.Code 1975, provides:
“In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been fíléd survive against the personal representative of a deceased tortfeasor.”
The parties agree that Franks’s claim for injunctive relief in the form, of compelling the petitioners to install Franks to the teaching position is moot. A moot case lacks justiciability, and an action that originally was based on a justiciable act cannot be maintained on appeal if subsequent acts or events have made' the questions raised on appeal moot. Chapman v. Gooden, 974 So.2d 972 (Ala.2007).
We now turn to Franks’s claim for a judgment declaring “that the [petitioners] have failed and refused to accord [Franks] the rights and benefits to which she is entitled” under the School-Board’s RIF policy and her mandamus petition “requiring [the petitioners] to provide her the full benefits of said [RIF] policy including ... backpay” and interest. (Franks’s amended complaint.) Franks’s estate was substituted as a party pursuant to Rule 25, and her claim for 'monetary relief was not “extinguished” upon her death. However, we must address the immunity defense asserted by the Board members and the superintendent.
It is well settled, that the State is generally immune from suit under § 14 of the Alabama Constitution of 1901. It is also well settled that one cannot sue the State indirectly by suing an officer in his or her official capacity. County boards of education, along with the members of the those boards sued in their official or representative capacities, also enjoy the protection 'of immunity provided by § 14 when the action against them is effectively an action' against the State. See Ex parte Montgomery Cnty. Bd. of Educ., 88 So.3d 837 (Ala.2012)(holding that the county board' of education and members of the board of education in their official capacities were immune from suit under § 14 on a tort claim brought on behalf of an elementary-school student who was injured in a restroom); Ex parte Monroe Cnty. Bd. of Educ., 48 So.3d 621 (Ala.2010)(holding that for the purposes of sovereign immunity, county boards of education are considered agencies of the State).
Section 14 immunity is not absolute; there are actions that are not barred by the general rule of immunity.
“[C]ertain actions are not barred by § 14. There are six general categories of actions that do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial ■acts; (4). actions brought against State officials - under the Declaratory Judg *18 ments Act, Ala.Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep’t of Transp., 937 So.2d 56, 58 (Ala.2006) (quoting, Ex parte Carter, 395 So.2d 65, 68 (Ala.1980)); Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831 (Ala.2008) (holding that the exception for declaratory-j udgment actions applies only to actions against State officials). As we confirmed in Harbert, these ‘exceptions’ to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep’t of Transp., 990 So.2d at 840-41.”
Ex parte Alabama Dep’t of Fin., 991 So.2d 1254, 1256-57 (Ala.2008). The sixth “exception” to § 14 immunity was restated in Ex parte Moulton, 116 So.3d 1119, 1141 (Ala.2013), as follows: .
“(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967), and (b) actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So.2d 81, 83 (Ala.1989).”
Franks sued the Board and the superintendent asserting that her employment was terminated as a result of a RIF. Section 16-l-33(b), Ala.Code 1975, provides that “[e]ach board shall adopt a written reduction-in-force policy consistent, with Section 16-1-30, [Ala.Code 1975]. The policy shall include, but shall not be limited to, layoffs, recalls, and notifications of layoffs and recalls.” ' The RIF policy of the board shall be based on “objective criteria.” § 16 — 1—33(b). A “layoff” is defined in § 16-l-33(a)(3) as “[a]n unavoidable reduction in the work force beyond normal attrition due to decreased student enrollment or shortage' of revenues.” The Board adopted its RIF policies and procedures in 2002.
The Board’s RIF policy provides:
“In the event it' becomes necessary to reduce the number of professional staff employed by the Choctaw County Board of Education due to a decrease in student enrollment, financial exigency, changes in curriculum, consolidations or reorganization, the following procedure shall be followed to determine staff members to be affected.
“I. Attrition by resignation, retirement or voluntary leaves . of absence shall be the first method used to reduce the force.
“II. Based on the philosophy of maintaining the best educational program possible, the Choctaw County Board of Education, upon recommendation of the Superintendent, shall identify the grade level(s) and discipline area(s) from which staff members are to be reduced in force at respective times. For the purpose of reduction in force the following terms are defined:
*19 “A. Grade . Level — Kindergarten, elementary grades 1-6, secondary grades 7-12, administration and. supervision, special education, counseling and. guidance, career/technical programs, and federal programs.
“B. Discipline Area — Certificate endorsement area(s) and eurrént major teaching or administration/supervisory assignment(s) within the Choctaw County School System. .
■ “III. Following the identification of the grade level(s) and discipline area(s), the number of staff to be reduced from each area(s) will be determined by the Board, based on a recommendation by the Superintendent. All staff members within the identified area(s) will be rank ordered from the greatest amount of service time to the least amount of service time within the Choctaw County School System. The staff member(s) with the least amount of continuous service time (seniority),. based, on actual date of employment as reflected in > the Choctaw County Board of Education minutes,, shall be the first to be reduced in force. In the event two (2) or-more staff members have the same amount of continuous service time with the Choctaw County School System based on Board minutes, the following -additional criteria will be used to determine the order of reduction of force. ’
“A. Degree(s) held by" the staff member (the staff member with the lower degree to be reduced).
“B. Total years of experience in education (the staff member with the least number of years experience to be reduced first).
“C. If tied at this point, the staff member with the lowest social security number (last four numbers) will'be reduced first.
“CHAPTER 6.00 — HUMAN . RESOURCES
“IV. In order for a staff member selected to be reduced in force by these procedures to displace a staff member in ■ another -discipline area with less service time, said staff member must be certified‘to handle the entire position of the employee they seek tó displace. No tenured teacher will be reduced in force when a position is either vacant or occupied by a non-tenured teacher and for which the tenured teacher is certified. In no -ease shall a staff member from the central office work site be able to dis'place a staff member from the local school work site or vice versa.
“V. The above procedure shall not violate any applicable court order.
“VI. The names of personnel reduced in force shall be placed in a Choctaw County School System employment pool. Said personnel shall be given the opportunity in reverse’ order of their layoff to fill the. first comparable employment vacancies for which they are qualified.
“VII. It is understood that reduction in force- constitutes termination of employment and all benefits provided by the Choctaw County School System •cease on the effective.date.”
The petitioners -argue that Franks’s claims do not come under any of the “exceptions”- to § 14 immunity. They argue that they had no legal duty to instate Franks to the vacant teaching position under the school board’s RlF policy when the termination of Franks’s employment was not a result of a RIF.being implemented by the Board members'.- They also argue that implementing a RIF is a discretionary act and not a- ministerial one. The petitioners argue that Franks’s claim for declaratory relief is not-an “exception”-because declaratory relief is outside § 14 *20 immunity when the injunctive relief seeks no more than the construction of a statute and how it should be applied. Here, they argue that Franks is seeking a declaration of rights under the school board’s discretionary policy. Last, the petitioners argue that they were not acting under a mistaken interpretation of law when they did not install Franks to the vacant teaching position because there was no statute or board policy requiring them to do so. In Board of School Commissioners of Mobile County v. Weaver, 99 So.3d 1210 (Ala.2012), assistant principals in the school system originally received a letter stating that their contracts were not being renewed but that they would be assigned to nine-month teaching contracts in their area of certification, which is referred to as a partial cancellation of their contracts. The assistant principals were subsequently sent a second letter that provided that the school board was recommending a partial cancellation of their contracts. The second letter provided that the partial cancellation was the result of a RIF and that recalls to assistant-principal positions would be based on the school board’s RIF policy. Subsequently, some of the assistant principals discovered that others with less seniority were being re’hired for assistant-principal positions. The assistant principals sued the school board and the superintendent seeking reinstatement and back-pay. The school board contended that the second letter was a mistake and that no RIF had been declared. The trial court entered a judgment in favor of the assistant principals. The school board and the superintendent appealed.
This Court in Weaver reversed the trial court’s judgment.. We held that the school board was immune from suit because the exceptions to § 14 extend only to actions against State officials and not to actions against State agencies. As to the superintendent, the assistant principals argued that the superintendent had a legal duty to comply with the RIF policy and that their action was brought to compel the superintendent to perform her duty. We held that the superintendent is not vested with the authority to employ or to terminate principals and teachers beyond making a recommendation to the school board. We stated:
“Assuming, without deciding, that a duty did arise • on behalf of Superintendent Nichols to implement the- reduction-in-force policy based on the circumstances surrounding the representations contained in the letter of May 9, it was the Board’s individual members in their official capacities who were vested with the authority to provide the plaintiffs with the ultimate relief sought, i.e., reinstatement to their positions with back-pay. § 16-8-23, Ala.Code 1975. Like the situation presented in Ex parte Bessemer Board of Education, [68 So.3d 782 (Ala.2011) ], where the Board members were vested with the statutory duty ■ to pay the plaintiff teacher her appropriate salary increase, it was the individual board members in this case who were vested with the statutory authority to reinstate the plaintiffs to their positions as assistant principals. However, unlike the situation presented in Ex parte Bessemer Board of Education, the individual Board members in this case were not sued and were not made parties in this case, Only the Board and Superintendent Nichols were made parties to this case. The Board is entitled to absolute immunity, and Superintendent Nichols is not vested with the authority under § 16-8-23, Ala.Code 1975, to grant the plaintiffs the relief they request. Accordingly, we cannot conclude that this action is an action to compel Superintendent Nichols to perform a legal duty; thus, it does not fall within the *21 first designated ‘exception’ to § 14 immunity.”
99 So.3d at 1220-21.
Like the superintendent in Weaver, the superintendent in the present case cannot provide Franks with the relief she requested. The superintendent makes recommendations to the schodl board with respect to personnel matters. Section' 16-8-23, Ala. Code 1975, provides that “[t]he county board of education shall appoint, upon the written recommendation of the county superintendent, all principals,'teachers, clerical and professional assistants authorized by the board.” The superintendent had the authority only to make recommendations to the school board.
With regard to the Board members, we cannot say that the holding in Weaver means that the Board members in the present case have a legal duty to provide Franks with the relief she requested. First, Weaver is factually distinguishable. In Weaver, the school board mistakenly informed the assistant principals that their jobs had been partially cancelled due to a RIF and that rehiring would be done pursuant to that school board’s RIF policy. The trial court in Weaver found that the school board and the superintendent had to comply with the RIF policy based on the theory of estoppel. In the present case, the Board members did not vote to implement a RIF, nor was Franks notified that the termination of her employment was the result of a RIF or that any “recall” would be based on the RIF policy. Instead, Franks was notified that her contract for a part-time, temporary vocational counselor was being canceled because of a “justifiable decrease in jobs in the system” as provided for in § 16-24-8 (now repealed). The Board members approved the superintendent’s recommendation to cancel Franks’s contract, and Franks was notified that she could contest the cancellation pursuant to § 16-24-10 (now repealed). Franks did not seek redress under § 16-24-10.
Weaver is algo distinguishable from the present case because, in Weaver, this Court stated that if a legal duty existed, it was the school-board members in their official capacities who had the authority to grant, the assistant principals the relief they requested, and not the school board or the superintendent. Here, the Board members are vested with the authority to hire and fire school employees. However, this does not mean that the Board members had an imperative duty to hire Franks as a business-education teacher and to provide her with backpay and benefits. Section 16-1-33 requires school boards to adopt a written RIF policy that includes “layoffs, recalls, and notifications of layoffs and recalls.” The Board members met this requirement in 2002. The adoption of the RIF policy did not require the Board members to implement the RIF policy anytime an employee’s contract was not renewed. Here, no RIF was voted on by the Board members, Franks was not notified that her contract was being canceled because of a RIF, and former § 16-24-8[2] was in operation at the time Franks’s contract was canceled.
In Belcher v. Jefferson County Board of Education, 474 So.2d 1063 (Ala.1980), two nontenured teachers contended that the county board of education had failed to evaluate them as required by the evaluation policy it had adopted. In that case, the board had adopted a specific written policy governing teacher evaluations. 474 *22 So.2d at 1066. The teachers asserted negligence, violation of due-process rights, and breach-of-contract claims based on the board’s failure to follow its evaluation policy. The trial court dismissed the actions, concluding that the teachers had failed to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala. R. Civ. P. This Court reversed the dismissal of the teachers’ breach-of-contract claims, holding that “the Board of Education did not legally have to follow any particular evaluation policy absent its own self-imposed procedures. Having adopted a policy, however, the Board is bound to follow it.” Belcher, 474 So.2d at 1068. Belcher is distinguishable, however, because it involved a motion to dismiss, and the present case involves a motion for a summary judgment. Belcher is also distinguishable because the RIF policy had not been invoked in the present case.
Nelson v. Megginson, 165 So.3d 567 (Ala.2014), involved a declared RIF by a school board. Nontenured teachers and probationary employees brought a class action against the members of the school board in their official capacities and the superintendent. The plaintiffs alleged that their employment had been terminated as a result of a RIF and that failure to rehire them violated the school board’s RIF policy. The trial court granted the defendants’ motion to dismiss based on the two-year statute of limitations the court concluded was applicable. This Court held that, viewing the allegations in the complaint in a light most favorable to the plaintiffs, as required under the standard of review applicable to a ruling on a motion to dismiss, the complaint stated a breach-of-contract claim subject to a six-year statute of limitations. In reviewing the school board’s policy, we stated:
“We see no way to read the ... language in the policy concerning nontenured and probationary employees other than as an exception to the general statement that the policy does not give such employees a contractual right to employment. ', The .exception arises when a reduction in force is declared and the principal of a particular school designates a nontenured employee or a probationary employee as an individual who would have been rehired but for the reduction in force. Under those conditions, a nontenured or probationary employee possesses a ‘one time recall right ... for one calendar year from the effective date of his or her termination.’
[[Image here]]
“Thus, the plaintiffs in their complaint generally claimed that the policy provided a recall right to which they were entitled. Of course, in order to prevail on such a claim, the plaintiffs will face the burden of proving that they met tlie conditions necessary to qualify for the recall right. As we noted in the ‘Standard of Review,’ in evaluating a motion to dismiss, a court views the allegations of the complaint most strongly in the pleader’s favor and such a motion should be granted only when it appears beyond doubt that the plaintiff can prove no' set of facts in support" of the claim that would entitle the plaintiff .to relief. It is conceivable that the plaintiffs could prove a set of facts under which they had a contractual right the defendants violated and for which they are entitled to substantive relief.”
165 So.3d at 573-74 (footnote omitted). In contrast, the present case was before the trial court on a summary-judgment motion. Additionally, and as discussed earlier, the Board members had not voted to implement the Board’s RIF policy.
The present, case is also distinguishable from Ex parte Bessemer Board of Education, 68 So.3d 782 (Ala.2011). In Bes *23 semer Board, the legislature gave public-school teachers a pay increase based on their years of service. One of the teachers employed -by the Bessemer Board sued, among others, the board members in their official capacities, alleging that her statutory pay raise had been miscalculated. We held that the-board members had a statutory duty to pay the teacher the appropriate pay increase and that, in. doing so, they were performing a ministerial act. Because the board members were performing a ministerial function instead of a discretionary function, they were not entitled to § 14 immunity from the teacher’s action to compel them .to fulfill their statutory duty to pay . her the appropriate pay increase.
In Bessemer Board, we concluded that the school-board members had a statutory duty to pay teachers the appropriate, salary increases in accordance with the legislative pay raise. The basis of the teacher’s suit “involve[d] [the board members’] obedience to the statute; it [did] not involve any discretion.” 68 So.3d at 790. Although the Board members in the present case were statutorily required to adopt a RIF policy (which they did), the language of the Board’s RIF policy necessitates that a determination be made as to whether circumstances in the school system are present so as to trigger a reduction in the workforce, layoffs, and recalls. The Board members must decide whether it is “necessary to reduce the number of staff due to a decrease in student enrollment, financial exigency, changes in curriculum, consolidation, or reorganization” to warrant establishing the seniority of employees for layoffs and recalls. The mere adoption of a RIF policy did not mandate its implementation when one employee’s contract was not renewed pursuant to the former Teacher Tenure Act.. .
In Harris v. Owens, 105 So.3d 430 (Ala.2012), a former state-university employee brought an action against the university president and the individual members of the university’s board in their official capacities, alleging that her employment had been wrongfully terminated. The ■ trial court found that the university had not complied with the procedures set forth in its employee handbook and that the former employee was entitled to backpay and benefits. This Court held:
“In this case, § 14 immunizes the [university president and - individual board members] from any claim for monetary damages. Therefore, the circuit court did not have subject-matter jurisdiction over [the former employee’s] claim for backpay and benefits. See Ex parte Alabama Dep’t of Transp., 978 So.2d 17 (Ala.2007). ‘“‘“Lacking subject matter jurisdiction [a court] may take no action other than to exercise its power to dismiss the [claim]..... Any other action taken by a court lacking subject matter jurisdiction is null and void.” ’ ” Ex parte Blankenship, 893 So.2d [303,] 307 [(Ala.2004)] (quoting State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1029 (Ala.1999), quoting in turn Beach v. Director of Revenue, 934 S.W.2d 315, 318 (Mo.Ct.App.1996)).’ Ex parte Alabama Dep’t of Transp., 978 So.2d at 27. Thus, the circuit court’s order was void to the extent it purported to award backpay and benefits to Owens.”
105 So.3d at 435. Here, Franks’s request for declarative and injunctive relief involves monetary relief, and § 14 immunity bars any action characterized as a declaratory-judgment action or a writ of mandamus “when it is nothing more than an action for damages.” Lyons v. River Road Constr. Inc., 858 So.2d 257, 263 (Ala.2003).
In Ex parte Moulton, 116 So.3d at 1141, this Court restated the sixth “exception” to *24 the sovereign-immunity bar under § 14 to clarify that a suit for injunctive relief against a State official in his or her individual capacity would be meaningless because State officials act for and represent the State only in their official capacities.
Here, Franks sought injunctive relief in the form of instatement to a position under the Board’s RIF policy. She sued the Board members in their official or representative capacities. However, the petitioners could not have acted under a mistaken interpretation of law because the petitioners did not terminate Franks’s employment pursuant to the RIF policy.

Conclusion

Franks’s claim for instatement to the teaching position along with backpay and interest was premised on her allegation that the petitioners had a legal, nondiscre-tionary duty to recall her to a position following her termination based on the Board’s RIF policy. However, the Board’s RIF policy did not apply to Franks’s termination from her temporary, part-time job as a vocational counselor. A RIF was never implemented by the school board. Franks did not receive correspondence from the petitioners that her employment was being terminated as the result of a RIF. Instead, Franks’s employment was terminated pursuant to former § 16-24-8. The Board’s adoption of its RIF policy in 2002 did not mandate its implementation whenever there is a termination based on lack of funding, particularly when the decrease in jobs was one part-time position. The Board members must decide whether it is “necessary to reduce the number of staff due to a decrease in student enrollment, financial exigency, changes in curriculum, consolidation, or reorganization” to warrant establishing the seniority of employees for layoffs and recalls. Franks’s claims do not come within the category of actions excluded from § 14 immunity. The petitioners did not have a legal duty or a ministerial act to perform, nor did Franks’s claims involve the interpretation of a statute that applied under these facts. Also, the petitioners were not acting under a mistaken interpretation of law. Because the superintendent and the Board members have demonstrated immunity pursuant to § 14, they have established a clear legal right to a summary judgement on the claims asserted against them in their official capacities. Therefore, we grant the petition and issue a writ directing the Choctaw Circuit Court to vacate its order denying the petitioners’ summary-judgment motion and to enter a summary judgment on all the claims asserted against the superintendent and the Board members.
PETITION GRANTED; WRIT ISSUED.
STUART, PARKER, SHAW, MAIN, and WISE, JJ., concur.
MOORE, C.J., and MURDOCK and BRYAN, JJ., concur in the result.

. Section 16-24-8 was part of the former Teacher Tenure Act, which was repealed in 2011 and replaced by the Students First Act, Ala.Code 1975, § 16-240-1 et seq. .

. Section 16-24C-6, Ala.Code 1975, now addresses teacher termination for a "justifiable decrease in Ae number of positions.”