Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0263

————————————————

**Ex parte James E. Underwood and Braden Miles**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: John Long**

**v.**

**James E. Underwood and Braden Miles)**

**(Walker Circuit Court: CV-19-900131)**

PER CURIAM.

On April 14, 2017, Braden Miles, a deputy sheriff for the Walker County Sheriff's Office, activated the lights and siren on his patrol car and attempted to apprehend the driver of a motorcycle that he believed to be stolen. The motorcyclist, however, refused to stop and led Deputy Miles on a high-speed chase along a stretch of Alabama Highway 195. The chase ended when the fleeing suspect lost control of the motorcycle, swerved across the highway's centerline, and collided head-on with a vehicle being driven by John Long. Long was injured in the collision. The motorcyclist did not survive.

Long later sued Deputy Miles and James E. Underwood, the former Sheriff of Walker County, in the Walker Circuit Court, seeking to recover damages for injuries he had sustained in the collision with the fleeing motorcyclist. As relevant here, Long asserted various negligence-based claims against Deputy Miles and former Sheriff Underwood in their individual capacities. Specifically, Long alleged that Deputy Miles had negligently pursued the fleeing motorcyclist and that former Sheriff Underwood had negligently failed to implement policies, procedures, and training related to high-speed pursuits.

Deputy Miles and former Sheriff Underwood moved to dismiss Long's claims against them, arguing that they were entitled to immunity because those claims arose from acts performed within the line and scope of their duties. After the trial court declined to dismiss Long's claims on immunity grounds, Deputy Miles and former Sheriff Underwood petitioned this Court for mandamus relief from the trial court's denial of their motion to dismiss.

As explained below, the claims against former Sheriff Underwood must be dismissed because, as a former executive officer of the State, he is entitled to immunity from liability for damages for acts performed within the line and scope of his duties. Moreover, because our precedent requires us to extend the same immunity to deputy sheriffs, Long's claims against Deputy Miles must likewise be dismissed. We, thus, grant the petition for a writ of mandamus and direct the trial court to dismiss Long's action against former Sheriff Underwood and Deputy Miles.

<u>Facts and Procedural History</u>

According to Long's complaint, on April 14, 2017, Deputy Miles attempted to stop the driver of a motorcycle because he believed the motorcycle to be stolen and had observed the driver committing a traffic

3

violation. When, instead of stopping, the motorcyclist accelerated to speeds of more than 100 miles per hour, Deputy Miles "activated his lights and siren and pursued the suspect ...." The complaint alleges that Deputy Miles subsequently "gave chase over a nine (9) mile stretch of a winding and narrow county road, while reaching speeds of 115 [miles per hour]." As the motorcyclist fled northbound on Alabama Highway 195 ("AL-195"), with Deputy Miles in pursuit, Long was driving his car south along AL-195. Shortly after passing Bennett Road in rural Walker County, the motorcyclist failed to negotiate a curve in the road, lost control of the motorcycle, and crossed over the highway's centerline -- striking Long's southbound car head-on. Long was injured in the collision. The motorcyclist did not survive the crash.

In April 2019, Long sued Deputy Miles and former Sheriff Underwood, in their individual capacities, in the trial court. In his complaint, Long asserted federal constitutional claims under 42 U.S.C. § 1983 as well as state-law negligence-based claims. In particular, Long alleged that Deputy Miles had negligently pursued the fleeing motorcyclist, causing the suspect to lose control of his motorcycle and collide into Long's car. Long additionally alleged that former Sheriff

4

Underwood had negligently failed to (1) establish adequate policies regarding high-speed pursuits and (2) properly train and supervise his officers regarding such pursuits.

The case was removed to the United States District Court for the Northern District of Alabama on the basis of federal-question jurisdiction. The district court dismissed Long's federal claims with prejudice and declined to exercise supplemental jurisdiction over his state-law claims, remanding them to the trial court.

Deputy Miles and former Sheriff Underwood subsequently filed a motion to dismiss in the trial court, asserting that they were immune from Long's claims because those claims arose from actions taken within the line and scope of their duties. The trial court entered an order denying their motion to dismiss. Deputy Miles and former Sheriff Underwood now petition this Court for a writ of mandamus directing the trial court to dismiss the claims against them.

## Discussion

In their petition, former Sheriff Underwood and Deputy Miles urge us to conclude that the trial court erred in denying their motion to dismiss. Specifically, former Sheriff Underwood argues that, because

sheriffs are among the executive officers named in Art. V, § 112, of the Alabama Constitution, they are immune from individual-capacity claims for damages whenever those claims are based on acts performed within the course and scope of their duties. He asserts that Long's complaint, on its face, alleges negligence in the performance of decision- and policy-making duties that fell squarely within the line and scope of his employment as sheriff. Thus, he says, he must be afforded immunity from Long's suit.

Deputy Miles additionally argues that, as the alter egos of sheriffs, deputy sheriffs enjoy the same immunity afforded to sheriffs. According to him, because the acts that form the basis of his alleged liability in this case were performed within the line and scope of his duties as a deputy sheriff, immunity also bars Long's claims against him. We address each argument in turn.

A. <u>Whether Long's claims against former Sheriff Underwood must be dismissed</u>

Alabama has a well-developed body of law concerning the immunity afforded to sheriffs and other executive officers of the State. Our cases in that line of authority recognize that, because sheriffs are among the officers named in § 112 of the Alabama Constitution, they are generally

6

immune from "suit based on state law claims arising out of the execution of the duties of [their] office." <u>Boshell v. Walker Cnty. Sheriff</u>, 598 So. 2d 843, 844 (Ala. 1992) (plurality opinion); <u>see</u> <u>also</u> <u>Oliver v. Townsend</u>, 534 So. 2d 1038, 1044 (Ala. 1988) (holding that the defendant sheriffs, as executive officers, were entitled to immunity from claims that they had negligently and wantonly supervised prisoner's health); <u>Hereford v. Jefferson Cnty.</u>, 586 So. 2d 209, 210 (Ala. 1991) (holding that defendant sheriff, "as an executive officer of the State of Alabama," was entitled to immunity from claims arising out of his allegedly negligent and wanton release of a prisoner); <u>Ex parte Davis</u>, 930 So. 2d 497, 500-01 (Ala. 2005) (noting that "constitutional officers of this State" are entitled to immunity from individual-capacity claims for damages "whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment"); and <u>Ex parte Hale</u>, 6 So. 3d 452, 457 (Ala. 2008) (holding that breach-of-contract claim against sheriff in his individual capacity was barred by immunity because the

claim arose from "actions taken by [the defendant] in the execution of his duties as sheriff.").[1]

Importantly, the holdings in the above-mentioned decisions also find meaningful support in the text and structure of the Alabama Constitution. As previously noted, § 112 of the Alabama Constitution establishes the composition of our executive branch and states that

> "[t]he executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county."

Art. V, § 112, Ala. Const. of 2022 (emphasis added). The Alabama Constitution vests executive power in the independent executive officers listed in § 112 -- and sheriffs are among the officers named.

---

[1]These cases affirm a sheriff's entitlement to immunity for acts performed within the line and scope of his or her duties, subject only to exceptions not applicable here. Our precedent recognizes only five limited exceptions to the immunity conferred on sheriffs -- each of which concern equitable relief (for instance, actions to compel a sheriff's performance of ministerial acts or to enjoin a sheriff from acting beyond his or her authority). See, e.g., Parker v. Amerson, 519 So.2d 442, 443 (Ala. 1987). We reject the argument that a sixth exception, as recognized in Ex parte Moulton, 116 So.3d 1119, 1141 (Ala. 2013), permitting, under certain circumstances, claims for damages against certain state officials, would apply to a claim against a sheriff.

Furthermore, Art. III, §§ 42(b) and 42(c) of the Alabama Constitution explicitly mandate a separation of powers among the State's legislative, executive, and judicial branches. See Opinion of the Justices No. 380, 892 So. 2d 332, 334 n.1 (Ala. 2004). Section 42(b) states that "[t]he government of the State of Alabama shall be divided into three distinct branches: legislative, executive, and judicial." Section 42(c) further provides that,

> "[t]o the end that the government of the State of Alabama may be a government of laws and not of individuals, and except as expressly directed or permitted in this constitution, the legislative branch may not exercise the executive or judicial power, the executive branch may not exercise the legislative or judicial power, and the judicial branch may not exercise the legislative or executive power."

(Emphasis added.) In short, the separation-of-powers doctrine set forth in §§ 42(b) and 42(c) prohibits the judicial branch from encroaching on the authority of the executive branch, and § 112 tells us exactly who is vested with that executive authority.

The line of Alabama decisions acknowledging that sheriffs are immune from individual-capacity damages suits based on acts taken within the line and scope of their duties therefore reflects both (1) the separation-of-powers doctrine embodied in §§ 42(b) and 42(c) and (2) "the

unique constitutional status of sheriffs as executive officers." Suttles v. Roy, 75 So. 3d 90, 95 (Ala. 2010). Indeed, because the Alabama Constitution explicitly designates the officers listed in § 112 as the holders of the State's executive power, their immunity from liability for damages predicated on acts performed within the scope of their duties is needed to ensure that the judicial branch does not impermissibly encroach on executive-branch authority.[2]

Here, there are no allegations indicating that former Sheriff Underwood was acting outside the line and scope of his duties as sheriff when the conduct that is the basis of his alleged liability took place. To the contrary, in his complaint, Long alleges only that former Sheriff Underwood was negligent in the performance of his official duties. In particular, he seeks to hold former Sheriff Underwood liable for his actions (1) in hiring, training, and supervising the officers under his authority and (2) in developing and implementing policies related to high-speed pursuits. Those alleged actions arose from former Sheriff

---

[2]This long line of constitutional precedent concerns the separate and distinct immunity that is conferred on executive officers of the State and, thus, does not stand in tension with our Court's decision in Ex parte Pinkard, 373 So. 3d 192 (Ala. 2022), which addressed a statutory officer's entitlement to State immunity.

Underwood's performance of decision- and policy-making functions that were clearly within the scope of his duties as sheriff. Thus, under the principles embodied in both the Alabama Constitution and the relevant line of Alabama precedent, former Sheriff Underwood is entitled to immunity, and Long's claims against him must be dismissed.

B. Whether Long's claims against Deputy Miles must be dismissed

As previously noted, in the mandamus petition, Deputy Miles argues that, because this Court has previously recognized that a deputy sheriff is the alter ego of the sheriff for the purposes of immunity, he, too, is entitled to immunity from Long's claims.

Deputy Miles is correct that prior decisions of this Court have "held that deputy sheriffs are immune from suit to the same extent as sheriffs." Alexander v. Hatfield, 652 So. 2d 1142, 1144 (Ala. 1994). Pursuant to those decisions, deputies -- like sheriffs -- are entitled to immunity from individual-capacity claims for damages "whenever the acts that form the basis of the[ir] alleged liability were being performed within the line and

scope of the[ir] … employment." <u>Ex parte Donaldson</u>, 80 So. 3d 895, 899 (Ala. 2011).[3]

Nothing in Long's complaint suggests that Deputy Miles was acting outside the scope of his employment. Indeed, the complaint's specific factual allegations relating to Deputy Miles all concern his attempt to apprehend a suspected criminal -- actions that fall squarely within the duties of a sheriff and, consequently, his or her deputy. <u>See</u> § 36-22-3(a)(4) and (b), Ala. Code 1975. Moreover, the complaint expressly acknowledges that there was a legitimate explanation for Deputy Miles's pursuit of the fleeing motorcyclist and that he was acting "pursuant to the customs, policies or practices of the Walker County Sheriff's Office." The complaint does not allege that Deputy Miles's "actions were undertaken for some personal motive … and not as a part of his duties as a deputy sheriff." <u>Ex parte Davis</u>, 930 So. 2d at 501. Thus, because Long's complaint fails to allege any facts showing that Deputy Miles acted outside the line and scope of his duties, Deputy Miles is entitled to immunity, and Long's claims against him must also be dismissed.

_____

[3]Significantly, in his answer, Long also did not ask this Court to reconsider the applicability of the principle that a sheriff's deputy is the alter ego of the sheriff for the purposes of immunity.

Conclusion

Based on the foregoing, we grant the petition for the writ of mandamus and direct the trial court to dismiss Long's claims against former Sheriff Underwood and Deputy Miles on immunity grounds.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Bryan, McCool, and Lewis, JJ., concur.

Cook, J., concurs specially, with opinion.

Shaw, J., concurs in the result, with opinion.

Wise, Sellers, and Mendheim, JJ., concur in the result.

COOK, Justice (concurring specially).

I concur with the Court's opinion, believing that, under the circumstances of this case, former Sheriff James E. Underwood and Deputy Braden Miles are entitled to immunity from John Long's claims against them.

I write separately to address an issue not timely raised by the parties: the effect of the Legislature's 2011 amendment to § 36-22-3, Ala. Code 1975, on this Court's prior decisions concerning the immunity afforded to deputy sheriffs.

<u>Alabama Caselaw on Deputy-Sheriff Immunity</u>

As the main opinion notes, our Court has repeatedly held that "[a] deputy sheriff enjoys the immunity of the sheriff because of long-standing precedent treating the deputy as an alter ego of the sheriff." <u>Wheeler v. George</u>, 39 So. 3d 1061, 1093 (Ala. 2009). We have, thus, recognized that deputies are entitled to immunity from liability for damages "whenever the acts that form the basis of the[ir] alleged liability were being performed within the line and scope of the[ir] … employment." <u>Ex parte Donaldson</u>, 80 So. 3d 895, 899 (Ala. 2011).

The above-mentioned standard for deputy-sheriff immunity traces back to our decision in Hereford v. Jefferson County, 586 So. 2d 209 (Ala. 1991). There, we first held that the immunity conferred on sheriffs also extends to their deputies and provided a single reason for that extension: our prior caselaw embracing the principle that "'[t]he deputy sheriff is the alter ego of the sheriff.'" Id. at 210 (quoting Mosely v. Kennedy, 245 Ala. 448, 450, 17 So. 2d 536, 537 (1944)). Applying that principle in Hereford, we explained that, "'[i]f the deputy's acts are generally considered the acts of the sheriff [under Alabama law], it is logical that those acts should also enjoy the immunity covering the sheriff's own acts.'" Id. (quoting Carr v. City of Florence, 916 F.2d 1521, 1526 (11th Cir. 1990)). And, guided by that same reasoning, our Court -- in the over three decades since we announced our decision in Hereford -- has repeatedly treated a sheriff and his or her deputy as one officer for the purposes of immunity.

The Legislature's 2011 Amendment to § 36-22-3, Ala. Code 1975

In June 2011, the Legislature amended § 36-22-3, Ala. Code 1975, which prescribes the duties of a sheriff, to provide as follows:

"Any of the duties of the sheriff set out in subsection (a) or as otherwise provided by law may be carried out by deputies,

15

reserve deputies, and persons employed as authorized in Section 14-6-1[, Ala. Code 1975,] as determined appropriate by the sheriff in accordance with state law. Persons undertaking such duties for and under the direction and supervision of the sheriff <u>shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama …, as long as he or she is</u> acting within the line and scope of his or her duties <u>and is acting in compliance with the law</u>."

§ 36-22-3(b) (emphasis added).

This Court has yet to address the 2011 amendment's impact on our prior decisions holding that deputy sheriffs are entitled to the exact same immunity as sheriffs. As discussed above, those decisions provide that deputy sheriffs, as the alter egos of the sheriff, are entitled to immunity from liability for damages "whenever the acts that form the basis of the[ir] alleged liability were being performed within the line and scope of the[ir] … employment." <u>Ex parte Donaldson</u>, 80 So. 3d at 899.

In contrast to those prior decisions, § 36-22-3(b) appears to provide that, to qualify for the immunity granted to the sheriff under the Alabama Constitution, a deputy sheriff must act both "within the line and scope of his or her duties <u>and</u> … in compliance with the law." (Emphasis added.) Significantly, § 36-22-3(b)'s requirement that deputies act "in compliance with the law" does not appear to be contemplated by

16

our current precedent, which requires only that the deputies act "within the line and scope of the[ir] … employment." Ex parte Donaldson, 80 So. 3d at 899.

Likely Questions in a Future Case

In a future case, I assume our Court will be asked to consider the impact of the Legislature's 2011 amendment to § 36-22-3, unless the Legislature amends this statute further. For instance, our Court may be asked to consider the following questions:

1. Can § 36-22-3(b)'s requirement that deputies act "in compliance with the law" be read in harmony with our caselaw on deputy-sheriff immunity?

2. If not, is the "alter-ego" theory of deputy-sheriff immunity embraced by our precedent based upon the common law (which can ordinarily be altered by legislative action, see Reed v. Brunson, 527 So. 2d 102 (Ala. 1988) (holding that legislation modifying the common law was a valid exercise of the Legislature's police power)), or upon this Court's interpretation of the Alabama Constitution?

17

3. If that doctrine is based upon the Alabama Constitution rather than the common law, does our deputy-sheriff-immunity caselaw correctly interpret the Alabama Constitution (and, if not, should it be overruled)? In other words, is § 36-22-3(b) constitutional? See Magee v. Boyd, 175 So. 3d 79, 105 (Ala. 2015) (recognizing the judiciary's function as the "ultimate interpreter of the Alabama Constitution"); Opinion of the Justices. No. 368, 716 So. 2d 1149, 1155 (Ala. 1998) (opinion of Lyons, J.) (explaining that the "Legislature may, through statute, inform this Court's judgment as to the meaning of a constitutional provision; however, it has long been held that courts, ultimately, must determine the meaning of constitutional provisions").

These are difficult questions. Overruling existing precedent -- especially precedent that we have repeatedly affirmed for over 30 years -- should be done only after very careful consideration. See Bryan A. Garner et al., The Law of Judicial Precedent 333, 352 (2016).

On the other hand, our Court must follow the instructions of the Legislature except in the rare circumstances when its actions are

inconsistent with the Constitutions of the State of Alabama or the United States. We should strive, whenever possible, to construe statutes as consistent with our Constitution. See Jay Mitchell, Textualism in Alabama, 74 Ala. L. Rev. 1089, 1117 (2023) ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt.").

While our Court is tasked with determining the meaning of the Constitution, we are tasked with determining only what it says -- not what we might want it to say. Our Court has made clear that we are "not at liberty to rewrite statutes or to substitute [our] judgment for that of the Legislature." Ex parte Carlton, 867 So. 2d 332, 338 (Ala. 2003). Further, our Court has repeatedly made clear that "public-policy arguments should be directed to the legislature, not to this Court." Ex parte Ankrom, 152 So. 3d 397, 420 (Ala. 2013).

Moreover, the Alabama Constitution includes a separation-of-powers clause that provides that, "[t]o the end that the government of the State of Alabama may be a government of laws and not of individuals, … the judicial branch may not exercise the legislative or executive power." Art. III, § 42(c), Ala. Const. of 2022. Thus, unless a statute is unconstitutional, substituting our own meaning for the words used in a

statute "turn[s] this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers." DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 276 (Ala. 1998).[4]

## Would Application of the Statute Have Changed the Outcome of This Mandamus Petition?

Sometimes, there may be no difference between the immunity provided to a sheriff and the immunity provided to a deputy, even if we

---

[4]I believe that we are required to apply the "original public meaning" of the words in a statute or our Constitution, thus ensuring that we do not apply our own subjective meaning to the words used. New Prime Inc. v. Oliveira, 586 U.S. 105, 113 (2019) ("'[I]t's a "fundamental canon of statutory construction" that words generally should be "interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute."'" Wisconsin Central Ltd. v. United States, 585 U.S. 274, 284 (2018) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)).". Because our Court is in the judicial branch, our role is limited, and applying the "original public meaning" of the words in a statute helps this Court to stay within its constitutional role, which is a fundamental part of democracy. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, § 7, pp. 82-83 (Thomson/West 2012) ("Originalism is the only approach to text that is compatible with democracy. When government-adopted texts are given a new meaning, the law is changed; and changing written law, like adopting written law in the first place, is the function of the first two branches of government -- elected legislators and ... elected executive officials and their delegates."). See also Jay Mitchell, Textualism in Alabama, 74 Ala. L. Rev. 1089, 1092 (2023) ("[T]he meaning of a law is its original public meaning, not its modern meaning.").

read § 36-22-3(b) as conditioning immunity on a deputy's compliance with the law. For instance, if Long had raised § 36-22-3(b) in this case, the result might well have been the same as the one we reach today. Indeed, Long's complaint does not appear to allege any violations of the law and also expressly alleges that Deputy Miles had engaged his patrol car's lights and siren during the pursuit.[5] Because Long fails to allege any facts showing that Deputy Miles acted either outside the line and scope of his duties or illegally, Deputy Miles may have been entitled to immunity even if the additional requirement set forth in § 36-22-3(b) applied.

---

[5]I additionally note that, because it is undisputed that the patrol car driven by Deputy Miles never made any contact with Long's vehicle, I fail to see how Deputy Miles could have proximately caused Long's injuries. Our Court explained in Ex parte City of Warrior, 369 So. 3d 116 (Ala. 2022) that "'"'"[t]he rule governing the conduct of [a] police [officer] in pursuit of an escaping offender is that he must operate his car with due care and, in doing so, he is not responsible for the acts of the offender."'"'" Id. at 126 (citations omitted; emphasis added). Further, we stated that, "'"'"[a]lthough pursuit may contribute to the reckless driving of the pursued, the officer is not obliged to allow him to escape."'"'" Id. (citations omitted); see also Doran v. City of Madison, 519 So. 2d 1308, 1313 (Ala. 1988) (holding that, when a fleeing offender injures a third party, it is the offender's conduct, and not the conduct of the pursuing police officers, that is the proximate cause of the third party's injuries).

Regardless, because the parties did not timely raise the issue of § 36-22-3(b)'s effect on our deputy-sheriff-immunity caselaw, now is not the time to reach these difficult questions.

SHAW, Justice (concurring in the result).

I respectfully concur in the result. John Long filed a complaint against Sheriff James Underwood and Deputy Sheriff Braden Miles, in their official and individual capacities, seeking damages for, among other things, negligence. Our extensive body of existing caselaw clearly establishes that, under Ala. Const. 1901 (Off. Recomp.), Art. I, § 14,[6] Underwood and Miles are immune from suit in this case. This is not a new holding.

The State of Alabama acts through people. The executive department, which executes the law and thus performs most of the "acts" of the State, is made up of nine positions: "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county." Ala. Const. 1901 (Off. Recomp.), Art. V, § 112. The people in these positions perform the acts of the executive department; when

_____

[6]The facts underlying this case, and its commencement, occurred before the Alabama Constitution of 2022 was adopted, and all references in this writing are to the Alabama Constitution of 1901 (Official Recompilation). As to the content of the provisions discussed, there is no material difference between the two constitutions.

acting in the course and scope of their duties, they are performing the actions of the State, and thus, practically speaking, they are the State. Our Constitution further provides that "the State of Alabama shall never be made a defendant in any court of law or equity." § 14. We have long recognized that § 14 does not provide immunity merely when the State is simply named as a defendant in a complaint; § 14 can also protect from suit the people who perform actions for the State. In terms of the executive department, those people include the people occupying the positions listed in § 112.

There are other positions, and people in those positions, who can perform actions on behalf of the State and its agencies, subdivisions, and other entities. Those positions are not created by § 112 but by law, including statutes and regulations, and other inherent powers. In the context of the immunity provided by § 14, we have recognized a distinction between those people, who I will refer to as "statutory officers," and the "constitutional officers" listed in § 112:

> "When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14, our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who

24

> serve as the constitutional officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000). <u>See</u> <u>Ex parte Butts</u>, 775 So. 2d 173 (Ala. 2000) (adopting, by majority, the <u>Cranman</u> restatement of the rule governing State-agent immunity). <u>However, this Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment</u>."

<u>Ex parte Davis</u>, 930 So. 2d 497, 500-01 (Ala. 2005) (emphasis added). See also <u>Ex parte Lawley</u>, 38 So. 3d 41, 46 (Ala. 2009) (recognizing and applying the distinction between "statutory officers" and "constitutional officers" and the different immunity provided to each); <u>Reynolds v. Calhoun</u>, 650 F. Supp. 3d 1272, 1276 (M.D. Ala. 2023) ("[T]he Alabama Supreme Court has two distinct lines of cases for officers created by legislative statute and those created by the Alabama Constitution."). These "two different forms of immunity" are "rooted in the unique constitutional status of" constitutional officers provided by § 112. <u>Suttles v. Roy</u>, 75 So. 3d 90, 93, 95 (Ala. 2010). Suits against constitutional officers "for actions taken in the line and scope of their employment <u>inherently constitute actions against the State</u>, and such actions are

25

prohibited by § 14." Ex parte Shelley, 53 So. 3d 887, 895 (Ala. 2009) (emphasis added).

In addressing this distinct form of § 14 immunity for constitutional officers, we have had more occasion to discuss its application to sheriffs, as compared to other § 112 constitutional officers.[7] In Parker v. Amerson, 519 So. 2d 442, 442-43 (Ala. 1987), this Court stated: "A sheriff is an executive officer of the State of Alabama, who is immune from suit under Article I, § 14, Alabama Constitution of 1901, in the execution of the duties of his office ...." In that case, a sheriff who was alleged to have "committed negligent and wanton acts ... while executing his discretionary duties of hiring a jailer" was held to be immune from suit. 519 So. 2d at 446. In Ex parte Purvis, 689 So. 2d 794, 795 (Ala. 1996), the plaintiff claimed that a sheriff and his deputy "were responsible for implementing and enforcing appropriate policies and procedures for

---

[7]But this immunity applies to other § 112 constitutional officers as well. Wheeler v. George, 39 So. 3d 1061, 1092-93 (Ala. 2009) (holding that the Governor is entitled to the "same immunity" as a sheriff in a suit based on actions taken within the course and scope of the Governor's duties). See also Ex parte Worley, 46 So. 3d 916, 925 (Ala. 2009) (plurality opinion) (discussing the application of § 14 immunity, and the relevance of § 112, to the Secretary of State).

approaching, detaining, and apprehending dangerous fugitives; that they had failed to carry out their duties; and that their failure had proximately caused her injuries."[8] This Court, noting that it was undisputed that the sheriff and the deputy "were both acting within the line and scope of their employment," concluded that they were immune under § 14. Id. As Parker, Ex parte Purvis, and numerous other cases indicate, the analysis focuses on whether the constitutional officers, here a sheriff and a deputy sheriff, were executing their duties or acting within the line (or course) and scope of their employment; the "capacity" in which they are sued is of no consequence. See, e.g., Ex parte Burnell, 90 So. 3d 708, 710 (Ala. 2012) (holding that a jail warden "being sued for money damages for actions that arose out of his performance of his duties as a deputy sheriff" was immune from a suit by an inmate who was injured when she slipped and fell in a shower area of the jail); Ex parte Fielding, 86 So. 3d 354, 358 (Ala. 2011) (holding that a deputy "acting within the line and scope of his employment as a deputy sheriff" was entitled to immunity from the tort claims asserted against him in both his individual and official capacity);

---

[8]Deputy sheriffs, as the "alter egos" of sheriffs, are immune from suit to the same extent as sheriffs. Drain v. Odom, 631 So. 2d 971, 972 (Ala. 1994), and Wright v. Bailey, 611 So. 2d 300, 303 (Ala. 1992).

Ex parte Donaldson, 80 So. 3d 895, 899 (Ala. 2011) (holding that because sheriffs "are constitutional officers," and because deputy sheriffs act as their alter egos, "a claim for monetary damages made against a deputy sheriff in his or her individual capacity is barred by [§ 14] whenever the acts that form the basis of the alleged liability were being performed within the line and scope of the deputy sheriff's employment"); Ex parte Sumter Cnty., 953 So. 2d 1235, 1240 (Ala. 2006) (plurality opinion) ("[S]heriffs and deputy sheriffs are executive officers of this State" under § 112, and "claims against sheriffs and deputy sheriffs" are barred by § 14 when the sheriffs or their deputies are "'acting within the line and scope of their employment.'"); Ex parte Blankenship, 893 So. 2d 303, 305 (Ala. 2004) (stating that, because it was undisputed that a deputy sheriff was acting within the course and scope of his employment at the time he was involved in an automobile accident, § 14 bars an action against the deputy sheriff for damages arising out of the accident "because an action against a sheriff -- or a deputy sheriff -- for damages arising out of the performance of his duties is essentially a suit '"against the state"'" (citations omitted)); Ex parte McWhorter, 880 So. 2d 1116, 1117 (Ala. 2003) (holding, where it was undisputed that a deputy sheriff "was acting

28

within the line and scope of his employment as a deputy sheriff" at the time of a motor-vehicle accident, that the deputy was immune from a suit seeking damages for negligence and wantonness arising from that accident); Ex parte Haralson, 871 So. 2d 802, 806-07 (Ala. 2003) (holding that a deputy sheriff was immune under § 14 in a suit stemming from a motor-vehicle accident because he was "on duty" and performing an "activity [that] falls within the official duties of a deputy sheriff"); Alexander v. Hatfield, 652 So. 2d 1142, 1144 (Ala. 1994) (holding that a deputy sheriff was immune from a suit in her individual and official capacities seeking damages for negligent and/or bad-faith service of process; the deputy was "on duty" when she attempted to serve the papers); Boshell v. Walker Cnty. Sheriff, 598 So. 2d 843, 844 (Ala. 1992) (plurality opinion) (upholding the dismissal of a complaint against a sheriff sued for the alleged "assault and false arrest" by the sheriff's deputy because "a sheriff, as an executive officer of the State of Alabama, is immune, under ... § 14 ..., from suit based on state law claims arising out of the execution of the duties of his office"); Hereford v. Jefferson Cnty., 586 So. 2d 209, 209-10 (Ala. 1991) (upholding, on the basis of § 14 immunity, the dismissal of a suit against a sheriff, in his official and

29

individual capacities, seeking damages for negligence and wantonness stemming from the mistaken release of an inmate); and <u>White v. Birchfield</u>, 582 So. 2d 1085, 1088 (Ala. 1991) ("[T]he sheriff cannot be held liable under the theory of respondeat superior for the actions of his jailer because he is an officer of the state and the hiring of the jailer is one of his official duties. Thus, he is immune from this type of suit under Article I, § 14, Alabama Constitution of 1901.").

However, sheriffs, and presumably other § 112 constitutional officers, are not immune from certain types of actions.

> "A sheriff ... is immune from suit ... in the execution of the duties of his office, except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute."

<u>Parker</u>, 519 So. 2d at 442-43.[9] These "exceptions" were drawn from those articulated in <u>Aland v. Graham</u>, 287 Ala. 226, 250 So. 2d 677 (1977). The

---

[9]Additionally, a sheriff or deputy sheriff might not be immune for conduct that is deemed outside the course and scope of their duties. See, e.g., <u>Ex parte Haralson</u>, 853 So. 2d 928, 933 (Ala. 2003) ("It is conceivable that Griffith could prove facts that would show that at the time of the

Aland "exceptions" are also used in cases involving statutory officers, and

have been expanded and modified over the years:

> "'There are six general categories of actions that do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually when it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. …'

> "Ex parte Alabama Dep't of Fin., 991 So. 2d 1254, 1256-57 (Ala. 2008). The sixth 'exception' to § 14 immunity was restated in Ex parte Moulton, 116 So. 3d 1119, 1141 (Ala. 2013), as follows:

> "'(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, … and (b) actions for damages brought against State officials

accident Deputy Haralson was on a personal errand or otherwise had departed from the line and scope of his employment.").

31

> in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State.'"

Ex parte Hampton, 189 So. 3d 14, 17-18 (Ala. 2015).

In discussing the various forms of immunity that exist in this State, our caselaw has used different terms to describe the people who occupy the numerous positions within our government: state officials, state officers, executive officers, state agents, state employees, etc. While the constitutional officers designated in § 112, including sheriffs, might accurately be described with such terms, we must be careful not to assume that certain prior decisions, and the exceptions to immunity addressed in them, are discussing the distinct form of immunity applicable to constitutional officers. The second part of the "sixth exception," dealing with actions for damages brought against "State officials" when it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Ex parte Hampton, supra, is used in determining whether statutory officers are immune from suits brought against them in their individual capacities. However, as the caselaw cited above illustrates, the immunity afforded

constitutional officers looks to whether they were executing their duties or acting within the line and scope of their employment, and bars <u>both</u> official-capacity <u>and</u> individual-capacity suits. See, e.g., <u>Ex parte Davis</u>, 930 So. 2d at 500 ("[A] claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred."). See also <u>Tinney v. Shores</u>, 77 F.3d 378, 383 (11th Cir. 1996) (noting that "Alabama case law makes it clear" that the then-applicable version of the sixth "exception" does not apply to a sheriff's immunity). In <u>Poiroux v. Rich</u>, 150 So. 3d 1027 (Ala. 2014), numerous government officials, including several sheriffs, were sued over the collection of certain bail-bond fees. This Court addressed the "exceptions" discussed in <u>Ex parte Hampton</u>, supra, but, as to the claims against the sheriffs, this Court found that none of the exceptions articulated in <u>Parker</u> applied and thus held that the sheriffs were immune from suit. <u>Poiroux</u>, 150 So. 3d at 1038. <u>The "exceptions" to these different forms of immunity have developed along different paths</u>.[10]

---

[10]In <u>Birmingham Broadcasting (WVTM-TV) LLC v. Hill</u>, 303 So. 3d 1148, 1159 (Ala. 2020), the plaintiff "contend[ed]" that a sheriff's and a deputy sheriff's actions in that case were "subject" to the sixth "exception" discussed in <u>Ex parte Moulton</u>, 116 So. 3d 1119, 1141 (Ala. 2013). In addressing that "contention," and without actually holding that the

This Court's decision in <u>Ex parte Pinkard</u>, 373 So. 3d 192 (Ala. 2022), addressed § 14 immunity in the context of statutory officers, specifically overruling an analysis developed in <u>Barnhart v. Ingalls</u>, 275 So. 3d 1112 (Ala. 2018). However, the distinct immunity afforded constitutional officers long preexisted <u>Barnhart</u> and was not impacted by that decision or <u>Pinkard</u>. See <u>Reynolds</u>, 650 F. Supp. 3d at 1277 ("Cases granting State immunity to sheriffs -- even in individual-capacity suits -- were not discussed or overruled in <u>Pinkard</u> ....").

In this case, the alleged tortious conduct by Underwood and Miles clearly involved acts or omissions performed in the course and scope of their duties as a sheriff and a deputy sheriff, respectively. None of the "exceptions" in <u>Parker</u>, supra, are applicable to these claims. Underwood and Miles are thus immune from Long's negligence claims. <u>This form of immunity afforded to sheriffs and their deputies is not new and has long been applied in this State</u>.

---

"exception" applied to sheriffs and their deputies, this Court held that the evidence "failed to demonstrate" that the sheriff and deputy sheriff had "acted in bad faith or … under a mistaken interpretation of the law." <u>Id.</u> at 1160. That decision did not hold that the sixth "exception" applies to suits against constitutional officers.